UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CINDY LUNDGREN, | Case No. 20-CV-2467 (PJS/KMM) |
| Plaintiff, | |
| v. | ORDER |
| COUNTRY LIFE INSURANCE COMPANY, | |
| Defendant. | |

Zachary Schmoll, FIELDS LAW FIRM, for plaintiff.

Elizabeth S. Gerling and Ashley B. Abel, JACKSON LEWIS P.C., for defendant.

Plaintiff Cindy Lundgren filed this lawsuit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), alleging that defendant Country Life Insurance Company ("CLIC") wrongly denied her claim for long-term disability benefits under a plan sponsored by her employer ("the Plan"). Both parties moved for summary judgment. On July 9, 2021, the Court denied CLIC's motion in whole, granted Lundgren's motion in part, and remanded the case to CLIC with instructions to reopen the administrative record and reconsider Lundgren's claim.

This matter is now before the Court on Lundgren's motion for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). For the reasons that follow, Lundgren's motion is granted in part and denied in part.

I.  BACKGROUND

Lundgren previously worked for CC Services, Inc. as a senior claims representative.[1]  *See* ECF No. 1 ¶ 5.  Lundgren stopped working in June 2019 due to chronic pain and other medical problems.  After receiving short-term disability benefits for several months, Lundgren submitted a claim for long-term disability ("LTD") benefits.  AR 0635.  CLIC denied Lundgren's claim on February 27, 2020.  AR 0986–87.  Lundgren appealed, and CLIC affirmed its denial on November 12, 2020.  AR 1901; 1110–1111.  CLIC relied on two grounds in affirming its denial of LTD benefits to Lundgren:

First, CLIC cited a February 12, 2020 letter from one of Lundgren's treating physicians, Dr. Syed Hasan.  AR 0990, 1111.  In that letter, Dr. Hasan stated that Lundgren had been cleared to return to work subject to a number of significant and permanent restrictions.  AR 0990.  Those restrictions included, among other things, that Lundgren could stand for no more than 10% of her day and could sit for no more than 33% of her day.  AR 0637, 0990.  CLIC seized on Dr. Hasan's statement that Lundgren had been "cleared to return to work," but CLIC completely ignored the restrictions imposed by Dr. Hasan.  In particular, CLIC did not address how Lundgren could

---

[1] Lundgren's former employer is also referred to by the parties and in the Administrative Record as "Country Financial."  *See, e.g.*, ECF No. 23, AR 0326.

perform her duties as a claims representative consistent with the restrictions imposed by Dr. Hasan. AR 1110–1111.

Second, CLIC cited a report authored by Dr. Gary Wyard, an orthopedic surgeon hired by CLIC to review Lundgren's claim. AR 1111, 1086–1101. Dr. Wyard's report consists almost entirely of a summary of Lundgren's medical records. In a brief passage toward the end of his report, Dr. Wyard provides the following opinion:

> Ms. Lundgren is capable of working as a claims representative from an orthopedic/musculoskeletal standpoint. She is basically neurologically intact. She has had a surgery on her low back. It is a reasonable and common surgery . . . . She appeared to have acceptable outcomes.
>
> She is certainly capable of working as a claims representative.

AR 1097. CLIC did not provide Dr. Wyard's report to Lundgren before affirming the denial of her claim for LTD benefits, so Lundgren never got a chance to comment on it. *See* AR 1110–1111.

After CLIC upheld its denial of her claim, Lundgren filed this lawsuit. The parties filed cross-motions for summary judgment, and the Court held a hearing on July 9, 2021. ECF Nos. 22, 33, 42. Ruling from the bench, the Court denied CLIC's motion in full and granted Lundgren's motion in part and denied it in part. ECF No. 41. Specifically, the Court denied Lundgren's motion insofar as she requested damages and

a declaration that she is entitled to LTD benefits, but granted her motion insofar as she requested that her claim be remanded to CLIC for further administrative proceedings. *Id.*

In the course of its bench ruling, the Court explained that, pursuant to 29 C.F.R. § 2560.503-1(h)(4)(i), CLIC was required to provide Lundgren with "any new or additional evidence considered, relied upon, or generated" by CLIC in connection with her claim sufficiently in advance of its final decision to give Lundgren a "reasonable opportunity to respond prior to that date." CLIC committed a blatant violation of this regulation by failing to provide Dr. Wyard's report to Lundgren before CLIC issued notice of its adverse determination on appeal. As a result, Lundgren did not receive the "full and fair review" to which she was statutorily entitled. *See* 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(h)(4). For that reason, the Court remanded Lundgren's claim to CLIC. *See* ECF No. 41.

After ruling that Lundgren's claim would be remanded, the Court went on to describe its views regarding the remaining legal issues so that, should the case come back before the Court following CLIC's reconsideration, the parties may tailor their briefing appropriately:

First, the Court opined that, contrary to CLIC's argument, the applicable standard of review in this case is likely de novo. *See* AR 0032 (providing that the "Plan

shall be construed, administered, and enforced according to the laws of the State of Illinois"); Ill. Admin. Code tit. 50 § 2001.3; *Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883 (7th Cir. 2015).

Second, the Court explained that, based on the record before it, the Court thought it "clear" that Lundgren is "disabled under the terms of the Policy." Indeed, the Court specifically directed counsel for CLIC to "warn your client that . . . the judge said that to him it looks like [Lundgren] is disabled." The Court noted that CLIC "did very, very poor work in handling" Lundgren's claim and that if CLIC "wants to stick with its position" that Lundgren is not disabled, CLIC "is going to have to do a lot better job on the remand than it did the first time." The Court emphasized that CLIC had failed to provide a single word of explanation of how Lundgren could work as a full-time claims representative while observing the extensive, permanent restrictions ordered by Dr. Hasan. The undisputed medical evidence in the record—indeed, the very evidence on which CLIC relied in denying Lundgren's claim—establishes that, on her best day, Lundgren can sit or stand for a cumulative total of 43% of the day. AR 0637. According to Lundgren's position description, however, the job of a senior claims representative is performed in a "[n]ormal office environment" and "may extend beyond normal business hours as business needs dictate." AR 0275, 0327. CLIC made no effort to resolve the apparent contradiction between Lundgren's extensive

restrictions and CLIC's ultimate conclusion that Lundgren is capable of performing her job and thus is not "disabled."[2]

The Court further remarked that Dr. Wyard's report was "virtually entirely a summary of medical records" and did nothing to bolster the medical basis for CLIC's decision.  Like CLIC, Dr. Wyard did not so much as hint as to how Lundgren was supposed to perform her duties as a full-time claims analyst when she has to spend more than half of her day neither sitting nor standing.  The sole analysis offered by Dr. Wyard is that Lundgren is capable of working as a senior claims representative because she is "basically neurologically intact"—a conclusion that the Court characterized as "useless."

The Court declined, however, to grant Lundgren's summary-judgment motion in full and declare her eligible for LTD benefits.  Instead, guided by the case law of the Eighth Circuit, the Court remanded Lundgren's claim to CLIC for further proceedings. *See Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1087 (8th Cir. 2009) (holding that the appropriate remedy for failure to provide a "full and fair review" is ordinarily remand rather than an award of benefits, and collecting cases).  As far as the Court is aware, CLIC's review of Lundgren's claim on remand is ongoing.

---

[2]The Plan defines "Disability or Disabled" as "the incapacity to perform the material duties of Your job because of physical or mental impairment due to Your Condition(s)."  ECF No. 1-1 at 3.

II. ANALYSIS

*A. Eligibility for Award of Attorney's Fees*

In an ERISA enforcement action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In *Hardt v. Reliance Standard Life Insurance Co.*, the Supreme Court explained that a claimant need not be a "prevailing party" in order to obtain attorney's fees under § 1132(g)(1), but must establish "'some degree of success on the merits.'" 560 U.S. 242, 244–45 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). That success must be more than "trivial" and more than "a purely procedural victory." *Id.* at 255 (citation and quotation marks omitted). The relevant inquiry is whether "the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* (citations, quotation marks, and alterations omitted).

In *Hardt*, as here, the district court expressed a favorable view of the merits of the plaintiff's claim and remanded the matter to the administrator for reevaluation of the plaintiff's entitlement to LTD benefits. *See id.* at 247–48, 255–56. But in *Hardt*, unlike here, the administrator found the plaintiff eligible for LTD benefits on remand before the plaintiff moved the district court for an award of attorney's fees. *Id.* at 249. The Supreme Court found that the plaintiff had achieved "far more" than trivial success,

-7-

and thus was eligible for a statutory award of attorney's fees. *Id.* at 256. Importantly, however, the Supreme Court left open the question of "whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)." *Id.*

"Most courts considering the question left unanswered in *Hardt* have held that a remand to the plan administrator for review of a claimant's entitlement to benefits, even without guidance favoring an award of benefits . . . is sufficient success on the merits to establish eligibility for fees under section 1132(g)(1)." *Gross v. Sun Life Assurance Co. of Can.*, 763 F.3d 73, 77 (1st Cir. 2014) (collecting cases).[3] In this case, of course, the Court not only "remand[ed] to the plan administrator for review of a claimant's entitlement to benefits," but also gave extensive "guidance favoring an award of benefits." *Id.* Indeed,

---

[3]*See, e.g., McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546–47 (6th Cir. 2011) (affirming summary judgment in favor of plan administrator following remand for further administrative proceedings, but holding that district court did not err in awarding attorney's fees to claimant following initial remand); *Gelfand v. Metro. Life Ins. Co.*, 28 F. Supp. 3d 903, 913–14 (D. Minn. 2014) (finding plaintiff eligible for attorney's fees following remand to administrator); *Derichs v. AT&T Servs., Inc.*, No. 16-2346-JWL, 2018 WL 4052151, at *3 (D. Kan. Aug. 24, 2018) (finding that claimant "achieved a significant victory" where district court adopted claimant's interpretation of plan term and remanded to administrator for further consideration); *Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-cv-00408 (CSH), 2018 WL 3489588, at *11 (D. Conn. July 19, 2018) (finding that remand constituted "'*some* success on the merits,'" even though defendant did not object to remand (citation and quotation marks omitted)); *Brown v. United of Omaha Life Ins. Co.*, No. 3:15cv161/MCR/EMT, 2016 WL 11584227, at *3 (N.D. Fla. Oct. 25, 2016) ("This court agrees with the majority of courts that a remand to a plan administrator, 'without more,' is sufficient to show some degree of success on the merits[.]" (citation omitted)).

the Court bluntly informed counsel for CLIC that she should "warn your client that . . . the judge said that to him it looks like [Lundgren] is disabled." The Court's bench ruling can hardly be characterized as "a remand order, without more," and it does not take a "lengthy inquiry" to conclude that Lundgren's success before the Court was "more than trivial."[4]  *Hardt*, 560 U.S. at 255–56 (cleaned up). Accordingly, the Court finds that Lundgren has demonstrated "some degree of success" with respect to her motion for summary judgment and thus is eligible for attorney's fees under § 1132(g)(1). *See, e.g.*, *Gross*, 763 F.3d at 78–79 ("[A] remand for a second look at the

---

[4]The handful of cases cited by CLIC that decline to award attorney's fees following a remand order are either distinguishable or represent the clear minority view on this question. *See Flynn v. Ascension Health Long Term Disability Plan*, No. 4:13CV2449 HEA, 2016 WL 11668662, at *1 (E.D. Mo. Jan. 22, 2016) (finding that limited remand to resolve a single factual issue as to claimant's use of a particular medication was a purely procedural victory, given that Court "did not imply the [administrator's] review was deficient"); *Christoff v. Ohio N. Univ. Emp. Benefit Plan*, No. 3:09CV540, 2010 WL 3958735, at *2 (N.D. Ohio Oct. 8, 2010) (finding that remand on procedural grounds did not constitute "some success on the merits" where court "did not assess the merits of any actual benefits determination by the defendants"); *Dickens v. Aetna Life Ins. Co.*, No. 2:10-cv-00088, 2011 WL 1258854, at *6 (S.D.W. Va. Mar. 28, 2011) (denying attorney's fees following remand to administrator where the court "expresse[d] no opinion as to whether Plaintiff is disabled under the LTD Plan's definition"); *Boyer v. Schneider Elec. Holdings, Inc. Life & Accident Plan*, 350 F. Supp. 3d 854, 867 (W.D. Mo. 2018) (denying request for attorney's fees without prejudice following grant of summary judgment in plaintiff's favor on one issue and remand to administrator on second issue), *rev'd and remanded on other grounds sub nom. Boyer v. Schneider Elec. Holdings, Inc.*, 993 F.3d 578 (8th Cir. 2021); *McCollum v. Life Ins. Co. of N. Am.*, No. 10-11471, 2013 WL 308978, at *1 (E.D. Mich. Jan. 25, 2013) (denying request for attorney's fees after district court initially granted summary judgment to defendant with respect to plaintiff's entitlement to benefits and was reversed by the Sixth Circuit with instructions to remand to the administrator for further proceedings).

merits of her benefits application is often the best outcome that a claimant can reasonably hope to achieve from the courts. To classify such success as a minimal or 'purely procedural victory' mistakes its importance.").

### B. Factors Guiding the Court's Discretion

Having established that Lundgren is eligible for attorney's fees and costs under § 1132(g)(1), the Court must next determine whether an exercise of its discretion to award fees and costs is warranted. The Court's discretion is guided by the following factors: (1) the degree of CLIC's culpability or bad faith; (2) CLIC's ability to satisfy an award; (3) deterrence of others in circumstances similar to CLIC's; (4) whether Lundgren sought to benefit all participants and beneficiaries of an ERISA plan, or to resolve a significant legal question; and (5) the relative merits of the parties' positions. *Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 525 (8th Cir. 2020). These factors are only guidelines, however, and no single factor is dispositive. *See id.*

*(1) CLIC's culpability.* CLIC may not have exhibited "bad faith" in denying Lundgren's claim—if "bad faith" means acting dishonestly or fraudulently—but CLIC nevertheless bears a significant degree of culpability. CLIC violated a federal regulation when it failed to provide Dr. Wyard's report to Lundgren prior to issuing notice of its adverse benefits determination on appeal. CLIC also relied on Dr. Wyard's report as one of two bases for denying Lundgren's claim, even though the report was almost

entirely devoid of analysis and failed to provide a coherent explanation for Dr. Wyard's opinion that Lundgren was not disabled.

CLIC's other basis for denying benefits was Dr. Hasan's February 12, 2020 letter stating that Lundgren had been cleared to return to work with extensive restrictions. As the Court explained at the July 9 hearing, Dr. Hasan's opinion that Lundgren could work *as long as* a number of restrictions were implemented was not an opinion that Lundgren was not "disabled" within the meaning of the Plan. Whether Lundgren was disabled would depend on how the Plan defines "Disability or Disabled"—and, because the Plan defines "Disability or Disabled" as "the incapacity to perform the material duties of Your job," that question would depend on the "material duties" of Lundgren's job. ECF No. 1-1 at 3. Dr. Hasan was not opining on any of this. He is a doctor, not a claims representative. It was his job to provide a medical opinion about Lundgren's capabilities; it was CLIC's job to interpret the Plan and review Lundgren's "material duties" and determine whether Lundgren was disabled in light of Dr. Hasan's opinion and other evidence.

CLIC failed in its responsibility. CLIC did not provide a word of explanation for its conclusion that Lundgren—who can neither sit nor stand for more than half of each day—could work as a senior claims analyst in a "[n]ormal office environment" and sometimes "beyond normal business hours as business needs dictate." AR 0275, 0327.

Based on CLIC's very poor handling of Lundgren's claim, the Court finds that CLIC is "culpable" and that this factor weighs in Lundgren's favor.[5]

*(2) CLIC's ability to satisfy an award.* CLIC does not dispute that it has the financial ability to satisfy an award of attorney's fees and costs. ECF No. 47 at 11. This factor also weighs in Lundgren's favor.

*(3) Deterrence.* Awarding fees and costs to Lundgren would serve a deterrent purpose. Such an award will provide an incentive to CLIC and other benefits administrators to handle disability claims consistently with federal regulations—and simply to use greater care. This factor also weighs in Lundgren's favor.[6]

---

[5] *Cf. McKay*, 428 F. App'x at 546 (affirming district court's finding that defendant's "failure to conduct a 'full and fair investigation' into McKay's claims . . . rose to the level of culpability required for a fee award"); *Derichs*, 2018 WL 4052151, at *3 ("The administrator was culpable in the sense that it failed to explain how it was interpreting the [relevant plan terms] . . . which failure prevented a meaningful review by this Court and necessitated a remand. Thus, there is at least some amount of culpability here, which tilts this factor slightly in plaintiff's favor.").

[6] *Cf. Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1041 (8th Cir. 2006) (holding that district court should have accorded greater weight to "the deterrent effect of an award of fees," as awarding fees "will serve as an incentive to Metro and the administrator to pay closer attention to their COBRA notice handling procedures"); *Brown*, 2016 WL 11584227, at *4 ("[T]he failure to provide an independent medical evaluation was careless; thus awarding fees in this case will help ensure that United, and others, will be more attentive when reviewing a claimant's records.").

*(4) Scope of relief.* Lundgren's lawsuit benefits only herself, and she does not raise a "significant legal ERISA question." *Johnson*, 950 F.3d at 525. This factor weighs in favor of CLIC.

*(5) Relative merits of the parties' positions.* As discussed above, the only legal issue on which the Court ruled at the July 9, 2021 hearing was whether CLIC violated 29 C.F.R. § 2560.503-1(h)(4)(i) when it failed to timely provide Dr. Wyard's report to Lundgren. Lundgren prevailed on that issue, and the question was not close. The Court also stated on the record that it was likely to rule in Lundgren's favor on the issue of the applicable standard of review and on the issue of whether Lundgren is entitled to benefits. This factor weighs in favor of Lundgren.

Having weighed all five factors—and having found that four of the five factors weigh in favor of Lundgren—the Court will exercise its discretion to award costs and fees under § 1132(g)(1). *See Johnson*, 950 F.3d at 526 (affirming award of attorney's fees even though "the fourth factor did not support an award, since the defendants do not seek to benefit the plan beneficiaries and participants").

### C. Reasonableness of Fee Request

Finally, the Court must determine the amount of attorney's fees to award. "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."

*Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002).  Lundgren's legal team is composed of five attorneys with hourly rates between $250 and $425 and ten paralegals, all of whom have hourly rates of $125.  ECF No. 46-1.  CLIC does not object to those rates, and the Court finds them to be reasonable based on the "ordinary rate for similar work" charged by firms in this region.[7]  *Fish*, 295 F.3d at 851.

Lundgren's legal team reportedly worked 160.2 hours on this matter, and Lundgren requests attorney's fees in the total amount of $40,215.  ECF No. 46-1 at 19.  The Court finds that a 25% reduction of this amount is warranted due to many billing entries that (1) are for routine clerical tasks, (2) are so vague that the Court cannot discern the nature of the work performed, or (3) appear to relate to the administrative proceedings before CLIC rather than to the litigation before this Court.[8]  Accordingly, the award is reduced to $30,161.25.  *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial

---

[7]*See Magruder Constr. Co. v. Gali*, No. 4:18-CV-00286 JAR, 2020 WL 4535122, at *3 (E.D. Mo. Aug. 6, 2020) (finding that hourly rates between $300 and $450 for attorneys in ERISA and breach-of-contract action were reasonable); *Taylor v. City of Amboy*, No. 14-CV-0722 (PJS/TNL), 2017 WL 4075163, at *2 (D. Minn. Sept. 14, 2017) (finding hourly rate of $100 for legal assistants reasonable).

[8]*See Rosen v. Wentworth*, 13 F. Supp. 3d 944, 952–53 (D. Minn. 2014) ("[R]outine clerical tasks . . . cannot fairly be accounted for at an attorney's, or even a paralegal's, billing rate."); *Johnson*, 950 F.3d at 526 (affirming reduction of attorney's fee award because, among other deficiencies, "some tasks [were] described too generally"); *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1011 (8th Cir. 2004) (holding that attorney's fees available under § 1132(g)(1) include only those fees incurred in the judicial action, not those attributable to prior administrative proceedings).

courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.").

The Court further finds that an additional 30% reduction is warranted because Lundgren did not receive all of the relief that she seeks in this action. Lundgren's claim has been remanded to CLIC for further consideration, but neither CLIC nor this Court has yet determined that she is entitled to LTD benefits. *See Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712–13 (8th Cir. 2021) ("'[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983))). Accordingly, Lundgren is awarded attorney's fees in the total amount of $21,112.88.

### D. Costs

"[C]osts awarded under ERISA are limited to expenses in 28 U.S.C. § 1821 and § 1920." *Johnson*, 950 F.3d at 527. The billing summary submitted by Lundgren's attorneys includes several expenses not compensable under either statute. *See id.* ("Postage and delivery costs are not taxable."); ECF No. 46-2 (listing eight billing entries for "postage"). Moreover, almost all of the "costs" claimed by Lundgren were incurred months before this lawsuit was filed. Because those costs were incurred in connection with the administrative proceedings before CLIC rather than in connection with the

litigation before this Court, they are not compensable under § 1132(g)(1).  *See Parke*, 368 F.3d at 1011 (8th Cir. 2004).[9]  The Court finds that Lundgren's recoverable costs are limited to the $402 filing fee.  *See* 28 U.S.C. § 1920(1).

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff Cindy Lundgren's motion for attorney's fees [ECF No. 43] is GRANTED IN PART AND DENIED IN PART.  Lundgren is awarded $21,112.88 in attorney's fees and $402.00 in costs.

Dated:  October 8, 2021              s/Patrick J. Schiltz
                                     Patrick J. Schiltz
                                     United States District Judge

---

[9]*Parke* addressed the recovery of attorney's fees (not costs) under § 1132(g)(1), but the Eighth Circuit's reasoning applies equally to the recovery of costs.  The Eighth Circuit concluded that because § 1132(g)(1) limits recoverable attorney's fees to those incurred "[i]n any action under this subchapter," attorney's fees "attributable to the administrative review" were not statutorily authorized.  *Parke*, 368 F.3d at 1010–11.  Because recovery of attorney's fees and recovery of costs in an ERISA action are both authorized by the same statutory provision, the Court finds that *Parke* also precludes the recovery of costs incurred in the administrative action (at least where, as here, § 1132(g)(1) is the only authority cited in support of a request to be awarded costs).